Ryan Baker (SBN 214036)
 rbaker@bakermarquart.com
Scott Malzahn (SBN 229204)
 smalzahn@bakermarquart.com
Baker Marquart LLP
10990 Wilshire Blvd. 4th Floor
Los Angeles, CA 90024
Telephone: (424) 652-7800
Facsimile: (424) 652-7850

*Attorneys for Plaintiffs*
*Hologram USA, Inc. and Uwe Maass*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| HOLOGRAM USA, INC., a Delaware corporation; and UWE MAASS, an individual, <br><br> Plaintiffs, <br><br> v. <br><br> VNTANA 3D, LLC (d/b/a VNTANA) a California limited liability company; ASHLEY CROWDER, an individual; and BENJAMIN CONWAY, an individual; and DOES 1 through 10, <br><br> Defendants. | Case No. 14-cv-09489 <br><br> **COMPLAINT** <br><br> **DEMAND FOR JURY TRIAL** |

COMPLAINT

1

# INTRODUCTION

1. In 1862, John Pepper and Henry Dircks invented "Pepper's Ghost," a revolutionary illusion technique. Over the last 150 years, Peppers Ghost has appeared in movies, concerts, magic shows and amusement park rides. Many of us have sat alongside Pepper's Ghost in Disneyland's Haunted Mansion. Today, thanks to the Plaintiffs' patented technology, a new incarnation of Pepper's Ghost has appeared. The patented technology renders holographic-like images virtually indistinguishable from real-life bodies.[1]

2. Plaintiff Hologram USA acquired exclusive rights to the patented technology directly from co-plaintiff and patent-holder Uwe Maass. Hologram USA was created to specifically promote and publicize the type of three-dimensional entertainment only made possible by the Plaintiffs' patented technology.

3. Plaintiffs have never licensed or otherwise authorized defendants VNTANA, Ashley Crowder, or Benjamin Conway (collectively, "Defendants") to use Plaintiffs' patented technology. But that has not stopped Defendants from flagrantly exploiting Plaintiffs' intellectual property rights. Based on information and belief, Defendants make, use, offer to sell, and sell goods and services that infringe U.S. Patent No. 5,865,519 (the " '519 patent"). Defendants' willful infringement of this patent has damaged and continues to damage Plaintiffs. Plaintiffs seek the assistance of this Court to recover damages and enjoin Defendants' wrongful conduct.

---

[1] Technically, Plaintiffs' patented technology does not create holograms because the images generated are not three-dimensional. Instead, it creates the illusion of moving, three-dimensional images through use of a patented system that projects a two-dimensional image onto glass or plastic arranged at an angle (*e.g.*, a 45-degree angle) on stage.

## THE PARTIES

4. Plaintiff Hologram USA, Inc. ("Hologram USA") is a corporation organized and existing under the laws of the State of Delaware, having a principal place of business in Beverly Hills, California 90210. Hologram USA has licensed exclusive rights to practice the '519 patent from Uwe Maass.

5. Plaintiff Uwe Maass is a citizen of Germany and an individual residing in Dubai in the United Arab Emirates. The United States Patent & Trademark Office ("PTO") issued the '519 patent to Mr. Maass on February 2, 1999. Mr. Maass is also the sole named inventor on the 519 patent. Mr. Maass has owned all rights, title and interest to the '519 patent since the patent's issuance. A true and correct copy of the '519 patent is attached as Exhibit A.

5. On information and belief, defendant VENTANA 3D, LLC d/b/a VNTANA ("VNTANA") is a California limited liability company with a principal place of business in Santa Monica, California 90404.

6. On information and belief, defendant Ashley Crowder, is a citizen of the United States and California resident. She is co-Founder, member, and acting Chief Executive Officer of VNTANA.

7. On information and belief, defendant Benjamin Conway is a citizen of the United States and California resident. He is co-Founder, member and current Director of Business Development at VNTANA.

8. The true names and capacities, whether individual, corporate, associate, or otherwise, of certain Defendants sued in this complaint as DOES 1-10 (collectively, the "Doe Defendants"), are presently unknown to Plaintiffs, who therefore sue them by fictitious names. Plaintiffs will amend the complaint to allege their true names and capacities when ascertained. Plaintiffs are informed and believe and therefore allege that all Defendants, which include the Doe Defendants, were or are, in some way or manner, responsible for and liable to

Plaintiffs for the events, happenings, and damages alleged in this complaint.

9. Plaintiffs are informed and believe and thereon allege that at all times mentioned each Defendant was the agent, servant, employee, co-venturer, representative, alter ego, or co-conspirator of each of the other defendants, and acted with the knowledge, consent, ratification, authorization and/or at the direction of each defendant, or is otherwise responsible in some manner for the occurrences alleged in this complaint.

## JURISDICTION AND VENUE

10. This is a civil action for patent infringement arising under the Patent Laws of the United States of America, 35 U.S.C. § 101, et seq.

11. This Court has jurisdiction over the subject matter of this Complaint pursuant to 28 U.S.C. §§ 1331 and 1338.

12. This Court has personal jurisdiction over Defendants for at least the following reasons: (i) on information and belief, VNTANA's principal place of business is located in this District; (ii) on information and belief, defendants Crowder and Conway are residents of this State and District; (iii) on information and belief, Defendants regularly do business or solicit business, engage in other persistent courses of conduct, and/or derive substantial revenue from products and/or services provided to individuals in this District and in this State; and (iv) on information and belief, Defendants have purposefully established substantial, systematic, and continuous contacts with this District and expect or should reasonably expect to be in court here. Thus, this Court's exercise of jurisdiction over Defendants will not offend traditional notions of fair play and substantial justice.

13. Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b)-(c) and 1400(b). On information and belief, Defendants do business in and reside in this District, a substantial part of the events or omissions giving rise

to the claim occurred in this District, and Defendants are subject to personal jurisdiction in this District.

## FACTUAL ALLEGATIONS

### A. The Patented Technology

14. Plaintiffs' patented technology covers various amazing techniques for projecting video to create the illusion of life-size, full color, 3D moving images. The images used in these systems are three-dimensional, but are projected as two-dimensional images into a three-dimensional stage set. This technology is capable of creating the appearance of life-size, three-dimensional moving images on stage that are nearly indistinguishable from real people.

15. For example, Maass developed the inventions claimed in the '519 patent after researching an old stage trick called "Pepper's Ghost," originally developed in the 1800s. This illusion was capable of creating the illusion of a ghost on stage. The trick relied, in part, on a heavy pane of glass positioned on stage to reflect the image of an actor positioned off-stage. This trick is still used today, such as at Disney's Haunted Mansion. While Pepper's Ghost is a relatively simple technique for creating an illusion, it is not capable of producing large effects that could move around on a large stage. Before Maass's invention, people had to use technology that relied on 3D glasses to create the illusion of a large three-dimensional moving image on stage or on screen.

16. After studying Pepper's Ghost, Maass invented a proprietary system using a transparent smooth foil, capable of creating the illusion of life-size and three-dimensional images that may move around on a large stage. Importantly, the use of transparent smooth foil is practical to transport and setup on an existing stage and safe in comparison to the glass traditionally used in Pepper's Ghost. The invention also eliminated the need for using 3D glasses.

17. The technology described in the '519 patent is known for producing

high quality holographic-like projections. In 2006, certain embodiments of the technology were used to create a "live" performance by the animated band Gorillaz at the Grammy Awards. Subsequently, in 2012, pursuant to a license it had obtained from the patent holders at the time, Digital Domain used certain embodiments of the Plaintiffs' patented technology at the Coachella Music Festival to produce a life-size, three-dimensional moving image of deceased rapper Tupac Shakur performing on stage with Dr. Dre and Snoop Dogg.

18. In February 2014, Hologram USA outbid Digital Domain to acquire exclusive rights to the '519 patent and other technology. Hologram USA entered into an agreement with Maass and another patent holder to acquire these exclusive rights. As a result of the parties' agreement, Hologram USA became the exclusive licensee to '519 patent and other patents in all markets in the United States and Canada, with the exception of adult entertainment.

**B. Defendants' Infringement and On-Going Wrongful Conduct**

19. VNTANA advertises itself as a company that "empowers artists, celebrities, and brands to reach and engage new fans and customers authentically and affordably through the use of holograms." http://www.vntana.com/. It states that "[w]e bring fans face-to-face with their favorite artists, actors and athletes by transporting high definition, real-time holograms across the globe." *Id.*

20. In a March 23, 2014 interview with the Santa Monica Daily Press, Ms. Crowder admitted that VNTANA has used the same system used to create the Tupac Shakur holographic performance at the Coachella Music Festival before it allegedly designed a derivative projection system. *See* http://smdp.com/faces-of-silicon-beach-ashley-crowder-co-founder-and-ceo-vntana/133270.

21. On its website, VNTANA advertises its ability to provide custom hologram systems used in movie premiers, in-store displays, and other and venues. http://www.vntana.com/. It also advertises a V-3 Hologram system "for companies

1 | that are already experienced using holographic technologies, or for production
2 | companies looking to use holographic effects[,]" which is available for rental or
3 | purchase. -Id. Based on information and belief, the custom hologram systems and
4 | V-3 Hologram system (collectively, the "Accused Products") infringe on one or
5 | more claims in the '519 patent.

6 |     22.    On its website VNTANA sells the Accused Products as a method to
7 | create holographic-like images. Likewise Crowder and Conway actively promote
8 | their expertise in creating holographic effects and the infringing uses of the
9 | Accused Products in multiple press and online interviews.

10 |     23.    Based on information and belief, Crowder has personally participated
11 | in infringing the '519 patent. As co-founder, member, and Chief Executive Officer
12 | of VNTANA, she personally infringed and directed or knowingly and actively
13 | caused others to infringe the '519 patent. Crowder has mentioned in multiple press
14 | reports and interviews that she has personally and actively participated in the
15 | design, marketing, and sale of the Accused Products. She has also admitted that
16 | she was aware of, and used, the system used to create the Tupac Shakur
17 | holographic performance at the Coachella Music Festival before participating in
18 | the design and sale of the Accused Products.

19 |     24.    Based on information and belief, Conway also has personally
20 | participated in infringing the '519 patent. As co-founder, member, and Director of
21 | Business Development of VNTANA, he personally infringed and directed, or
22 | knowingly and actively caused others to infringe the '519 patent. Conway has
23 | discussed in multiple press reports and trade articles that he has personally and
24 | actively participated in the design, marketing, and sale of the Accused Products.
25 | He has also admitted that he was aware of, and used, the system used to create the
26 | Tupac Shakur holographic performance at the Coachella Music Festival before
27 | participating in the design and sale of the Accused Products.
28 |

25. On or about June 25, 2014, Plaintiffs sent a cease and desist letter that formally placed Defendants on notice of the '519 patent and their infringing activities. Plaintiffs demanded that Defendants cease all activities infringing on the '519 patent. A true and correct copy of Plaintiffs' June 25, 2014 demand letter is attached as Exhibit B.

26. Despite receiving a pre-litigation cease and desist demand, Plaintiffs are informed and believe and therefore allege that Defendants continue to make, use, offer to sell, and sell products and services incorporating the '519 patent without authorization.

27. On information and belief, the Accused Products infringe on one or more claims in the '519 patent.

28. Defendants' infringement of the '519 patent has caused and will continue to cause monetary and other damages to Plaintiffs.

## FIRST CLAIM FOR RELIEF – Against all Defendants
### (Infringement of Patent No. 5,865,519)

29. Plaintiffs incorporate by reference the preceding averments set forth in the preceding paragraphs.

30. The '519 patent duly and lawfully issued on February 2, 1999, to Uwe Maass and is titled "Device For Displaying Moving Images In The Background Of A Stage." The claims of the '519 patent are directed at a system or apparatus for representing three-dimensional moving images in the background of a stage or the like using an image source. *See* Exhibit A.

31. Mr. Maass is the owner of the '519 patent, and Hologram USA has licensed the exclusive right to exploit this patent in all markets in the U.S. and Canada with the exception of adult entertainment. Mr. Maass and Hologram USA have the right to bring this suit for injunctive relief and damages.

32. On information and belief, Defendants have been, are currently, and

unless enjoined, will continue to directly infringe one or more claims of the '519 patent by making, using, offering to sell, and selling within the United States the patented invention. Defendants' products and services embody and/or practice one or more claims of the '519 patent.

33. Defendants' infringing activities have caused and will continue to cause Plaintiffs irreparable harm, for which it has no adequate remedy at law, unless Defendants' infringing activities are enjoined by this Court in accordance with 35 U.S.C. § 283.

34. Plaintiffs have been and continue to be damaged by Defendants' infringement of the '519 patent in an amount to be determined at trial.

## SECOND CLAIM FOR RELIEF – Against All Defendants
### (Willful Infringement)

35. Plaintiffs incorporate by reference the preceding averments set forth in the preceding paragraphs.

36. As alleged above, the Defendants did not possess a valid license from Hologram USA to make, use, offer to sell or sell Plaintiffs' patented technology. Despite not having the proper license, Defendants willfully infringed the '519 patent.

37. The Defendants knew about the '519 patent before the complaint in this action was filed, and acted despite an objectively high likelihood that its actions constituted infringement of a valid patent. Defendants have admitted that they were aware of the Tupac hologram at Coachella. Under the circumstances, the Defendants surely understood that the technology used by them to create holographic-like projections was patented.

38. Despite their knowledge of the existence of the '519 patent, based on information and belief, Defendants willfully, intentionally and consciously infringed the '519 patent in disregard of Plaintiffs' rights.

39. Plaintiffs have also placed Defendants on written notice of their alleged infringement. Plaintiffs demanded in their pre-litigation letter that Defendants cease all activities infringing on the '519 patent. Defendants have failed to comply with this demand. *See* Exhibit B.

40. As a direct and proximate result of Defendants' willful infringement of the '519 patent, Plaintiffs have been and will continue to suffer monetary damages and irreparable injury. Defendants have created on-going confusion in the marketplace as to the rightful owners and licensors of the '519 patent, which renders this case appropriate for treble damages.

## THIRD CLAIM FOR RELIEF – Against All Defendants
### (Active Inducement)

41. Plaintiffs incorporate by reference the preceding averments set forth in the preceding paragraphs.

42. In addition to directly infringing the '519 patent, the Defendants are liable for indirect infringement. The Defendants actively induced the direct infringement of the '519 patent in violation of 35 U.S.C. section 271(b), which provides that whoever "actively induces infringement of a patent shall be liable as an infringer."

43. As alleged in greater detail above, the Defendants knew about the '519 patent before the complaint in this action was filed, and acted with knowledge that their induced acts constitute patent infringement. Defendants are familiar with the '519 patent and have had prior experiences with Plaintiffs' patented technology – which is widely known within the entertainment industry. Further, Plaintiffs expressly demanded that Defendants refrain from misappropriating their patented technology before this lawsuit was filed.

44. On information and belief, the Defendants intended to induce infringement of the '519 patent. The Defendants offer the Accused Products to

third parties and offer instruction to create a holographic intended to induce third parties to infringe the '519 patent.

45. In particular, based on information and belief, Defendants intentionally induced infringement of the '519 patent by placing the Accused Products into the stream of commerce, with knowledge that such products infringe the Patent At Issue. As stated on the VNTANA website, Defendants offer both the hardware and instructions for third parties to assemble the Accused Products that infringe the '519 patent. See http://www.vntana.com, Services tab.

46. As a direct and proximate result of Defendants' induced infringement of the '519 patent, Plaintiffs have been and will continue to suffer monetary damages and irreparable injury.

## FOURTH CLAIM FOR RELIEF – Against All Defendants
## (Contributory Infringement)

47. Plaintiffs incorporate by reference the preceding averments set forth in the preceding paragraphs.

48. In addition to directly infringing the '519 patent, the Defendants are liable for indirect infringement. The Defendants engaged in contributory infringement of the '519 patent in violation of 35 U.S.C. section 271(c), which provides that "[c]ontributory infringement occurs if a party sells or offers to sell, a material or apparatus for use in practicing a patented process, and that 'material or apparatus' is material to practicing the invention, has no substantial non-infringing uses, and is known by the party 'to be especially made or especially adapted for use in an infringement of such patent."

49. As alleged in greater detail above, the Defendants knew about the '519 patent before the complaint in this action was filed. Defendants are familiar with the '519 patent and have had prior experiences with Plaintiffs' patented technology – which is widely known within the entertainment industry. Further,

Plaintiffs expressly demanded that Defendants refrain from misappropriating their patented technology before this lawsuit was filed.

50. Based on information and belief, Defendants contributed to the infringement of the '519 patent by placing the Accused Products into the stream of commerce with knowledge that such products infringe the Patent At Issue. The Accused Products have no substantial non-infringing use.

51. As a direct and proximate result of Defendants' contributory infringement of the '519 patent, Plaintiffs have been and will continue to suffer monetary damages and irreparable injury.

### FIFTH CLAIM FOR RELIEF – Against All Defendants
### (Preliminary and Permanent Injunction)

52. Plaintiffs incorporate by reference the preceding averments set forth in the preceding paragraphs.

53. Immediate and irreparable injury will result to Plaintiffs unless this Court enters a Preliminary Injunction, pursuant to FRCP 65, enjoining all Defendants and their agents, servants, employees, attorneys, subsidiaries and any other individual or entity in active concert or participation with them who receives actual notice of the order, from infringing, inducing others to infringe, or contributing to the infringement of the '519 patent, including the manufacture, use, sale, and offer to sell any equipment or services related to the use of such equipment subject to the '519 patent.

54. Plaintiffs have a likelihood of success on the merits given that there is no dispute that Defendants have infringed and continue to infringe the '519 patent, by using and selling the Accused Products to create holographic-like images.

55. As a result of Defendants' unlawful activities, Plaintiffs have suffered and will suffer irreparable harm. Hologram USA has spent several million dollars building the Hologram USA name and brand. For instance, Hologram USA spent

millions of dollars to build a Beverly Hills showroom to display and market their patented technology to potential customers.

56. The acts of the Defendants have already caused Plaintiffs significant harm. By advertising, promoting and displaying the Accused Products, Defendants have contributed to significant confusion in the marketplace. That confusion has diluted the value of the Hologram USA brand by causing confusion among potential customers. On information and belief, Defendants are continuing to promote and sell the Accused Products to other prospective customers.

57. If Defendants are permitted to continue their infringing conduct, including but not limited to the continued promotion of their services, the irreparable harm suffered by Hologram USA will be immeasurable.

58. Defendants' actions will continue to irreparably harm Plaintiffs' business reputation and brand by creating consumer confusion as to the true owner of the patented technology. No adequate remedy at law will alleviate this harm.

## **REQUEST FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that:

a. Judgment be entered that Defendants have infringed one or more claims of the '519 patent;

b. Judgment be entered permanently enjoining Defendants, their directors, officers, agents, servants, and employees, and those acting in privity or in concert with them, and their subsidiaries, divisions, successors and assigns, from further acts of infringement of the '519 patent;

c. Judgment be entered that Defendants' infringement has been willful;

d. Judgment be entered awarding Plaintiffs all damages adequate to compensate them for Defendants' infringement of the '519 patent, including all pre-judgment and post-judgment interest at the maximum rate permitted by law,

and including a trebling of such damages due to Defendants' willful infringement.

    e.    For reasonable attorneys' fees incurred in bringing and litigating this action;

    f.    For costs of suit herein; and

    g.    Judgment be entered awarding all other relief as the Court deems proper.

DATED: December 10, 2014

BAKER MARQUART LLP

By: _____

Ryan Baker (Bar No. 214036)
rbaker@bakermarquart.com

*Attorneys for Plaintiffs Hologram USA, Inc. and Uwe Maass*

## DEMAND FOR JURY TRIAL

Please take notice that Plaintiffs demand trial by jury in this action.

DATED: December 10, 2014

BAKER MARQUART LLP

By: _____

Ryan Baker (Bar No. 214036)
rbaker@bakermarquart.com

*Attorneys for Plaintiffs Hologram USA, Inc. and Uwe Maass*